UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No. 1:13-cv-01485 AWI-GSA |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS RE. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| JOSEPH ANTHONY GONZALES, a/k/a JOE ANTHONY GONZALES, individually and d/b/a BREAKTIME BILLIARDS, | |
| | (Doc. 13) |
| Defendants. | |

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed a complaint against Defendant Joseph Anthony Gonzales (a/k/a Joe Anthony Gonzales) ("Defendant"), individually and doing business as Breaktime Billiards, alleging, *inter alia*, violations of federal telecommunications statutes. Doc. 1. Pending before the Court is Plaintiff's motion for default judgment. Doc. 13. Defendant Joseph Anthony Gonzales has not appeared in the action, nor has he filed an opposition. The Court took the matter under submission, without oral argument, pursuant to Local Rule 230(g). Upon a review of the pleadings, Plaintiff's motion is GRANTED IN PART.

///

**BACKGROUND**

The complaint alleges violations of The Federal Communications Act of 1934, as amended, specifically of 47 U.S.C. §§ 553 and 605, *et seq*. It also alleges a state law claim of conversion, as well as a violation of California Business and Professions Code § 17200, *et seq.* Doc. 1. Plaintiff's claims are premised on the allegation that it held "the exclusive nationwide commercial distribution (closed-circuit) rights to *Ultimate Fighting Championship 152: Jon Jones v. Vitor Belfort*," ("the Program") and that the Defendant illegally intercepted and broadcast Plaintiff's Program at his business establishment, Breaktime Billiards, in Modesto, California, when it was telecast nationwide on Saturday, September 22, 2012. Doc. 1, ¶¶ 14, 17.

Plaintiff served the summons and complaint on the Defendant via substitute service at his place of business, Breaktime Billiards, pursuant to Federal Rule of Civil Procedure 4(e)(1). Doc. 5. Under Rule 4(e)(1), an individual may be served under state law, here California law. California law authorizes substitute service at a place of business. *See* Cal. Civ. Proc. Code § 415.20(b). In a previous order, the Court asked for supplemental evidence regarding the propriety of the substitute service, specifically relating to the question whether Breaktime Billiards was Defendant's usual place of business. Doc. 17. Plaintiff filed supplemental evidence regarding the propriety of service at Breaktime Billiards, which satisfied the Court's concerns about the sufficiency of service of process. Doc. 18.

Defendants have not answered the complaint or otherwise appeared in this action. Doc. 13-2. Accordingly, the Clerk of Court has entered default against Defendants. Docs. 8, 9. In the instant Motion for Default Judgment, Plaintiff requests the Court to enter judgment in its favor. Plaintiff seeks relief on two of the four claims for relief asserted in the complaint, specifically claims one (Communications Act, 47 U.S.C. § 605, *et seq*.) and three (conversion). Pursuant to its Communications Act claim, Plaintiff requests damages in the amount of $110,000.00 (47

U.S.C. §§ 605(e)(3)(C)(i)(II) and (c)(ii)).  Pursuant to its conversion claim, Plaintiff seeks damages of $1,600.00.  The total damages sought by Plaintiff amount to $111,600.00.  Doc. 13-2.  Although Defendant was served with Plaintiff's Motion for Default Judgment by United States Mail, he has not filed an opposition or other response.  Doc. 13-2.  There is no evidence that Defendant is an infant or incompetent person, or in military service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 2003.  Doc. 13-2.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment upon application of the plaintiff.  Courts generally consider the *Eitel* factors in determining whether to grant a request for default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).  The *Eitel* factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

When a defendant has failed to respond to the complaint, courts presume that all well-pleaded factual allegations relating to liability in the complaint are true.  *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir.  1983) ("Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true."); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).  Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact.  *See Panning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978).  While factual allegations concerning liability are deemed admitted upon a defendant's default, factual allegations concerning the

amount of damages are not presumed to be true.  *See Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  The Court must ensure that any damages awarded are reasonable and supported by the evidence in the record.  Fed. R. Civ. P. 55(b)(2)(C); *Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

## DISCUSSION

### A. Default Judgment is Warranted under the *Eitel* Factors

Entry of default judgment is committed to the Court's discretion.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Applying the *Eitel* factors delineated above, the Court recommends that default judgment should be granted here.  Plaintiff's complaint reflects a meritorious substantive claim; it properly alleges material facts and elements necessary to the claims asserted and to the general relief sought.  Defendant has not appeared in this action or contested this motion, and there is no evidence that his default is the result of excusable neglect.  Inasmuch as Defendant's default serves as an admission to Plaintiff's well-pled allegations of fact, *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978), the Court concludes that there is no dispute as to any material fact.  There is no basis to conclude that Plaintiff will be prejudiced by the case proceeding via default judgment rather than trial.  Indeed, Plaintiff would suffer prejudice if the Court does not enter default judgment as Plaintiff would have no other means of recovery.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 499 (C.D.Cal.2003); *Joe Hand Promotions, Inc. v. Hauser*, 2014 WL 172532, at *3 (E.D. Cal. Jan. 15, 2014) (No. 1:13-cv-01072-LJO-SKO).  Thus, the only factor weighing against default judgment in this case is the relatively large amount of money Plaintiff seeks in damages.  However, as discussed below, the actual award made by the Court is not so large as to militate against proceeding by default judgment.  Therefore, although the Court favors resolving cases on the merits after adversarial proceedings, a default judgment is appropriate here.  Accordingly, the

4

Court RECOMMENDS that default judgment be entered against the Defendant.

**B. Damages under the Federal Communications Act**

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq.*, prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. Both statutory and enhanced damages may be awarded for violations of 47 U.S.C. § 605(a), which prohibits the unauthorized interception and distribution of communications. 47 U.S.C. § 605(a). "[L]iability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or published or aided the divulging or publishing of, a communication transmitted by the plaintiff." *California Satellite Systems v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985). Plaintiff's complaint states a claim for a violation of § 605(a). *See J and J Sports Productions v. Coyne*, 857 F.Supp.2d 909, 914 (N.D. Cal. 2012) (commercial establishment violated § 605 by broadcasting pay-per-view boxing match without authorization).

47 U.S.C. § 605(e)(3)(C)(i) authorizes an award of actual or statutory damages between $1,000 and $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(ii) authorizes enhanced statutory damages up to $100,000 for willful violations of § 605(a).[1] Here, Plaintiff's actual loss, i.e., the applicable sub-licensing fee for the Program, was $1,600.00. Plaintiff seeks maximum statutory damages of $ 110,000.00.

**Statutory Damages Pursuant to 47 U.S.C. 605(e)(3)(C)(i)(II)**

Under 47 U.S.C. § 605(e)(3), the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act. Plaintiff seeks the maximum limit of statutory damages of $10,000 under § 605(e)(3)(C)(i)(II).

---

[1] Although the term "enhanced" does not appear in the statute, courts have characterized the damages under § 605(e)(3)(C)(ii) as "enhanced" damages. *See*, e.g., *Joe Hand Promotions, Inc. v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009); *Kingvision Pay–Per–View, Ltd. v. Backman*, 102 F.Supp.2d 1196 (N.D. Cal. 2000). Accordingly, the Court will use the same term when referencing damages under this section.

5

In support of its request for maximum statutory damages, Plaintiff has submitted a form affidavit from its investigator. Doc. 13-3. The investigator spent three minutes (8:08 p.m. to 8:11 p.m.) at Breaktime Billiards, the Defendant's establishment, on September 22, 2012, when the Program was telecast nationwide. Doc. 13-3. The investigator noted that Breaktime Billiards had an approximate capacity of 200 people but during his visit he counted 46 people in the establishment. Doc. 13-3. The investigator indicated that he counted seven "approx. 36 [inch]-42 [inch] flat LCD" televisions in the establishment, specifically "1 above bar and [an]other 6 … along left wall in a row facing pool tables." Doc. 13-3. Significantly, the investigator's form affidavit does not expressly clarify whether the Program was being exhibited on all seven televisions, leaving that issue undetermined. Similarly, the affidavit is silent as to whether any of the people present in the establishment were actually watching the Program. No cover charge or any advertising or promotions related to the Program are noted. Although the affidavit notes the presence of a "small bar" within the establishment, it does not indicate that food and/or drinks were being served or that any premiums were being charged. Doc. 13-3. The affidavit states that the establishment did not have a satellite dish and that the investigator did not see a cable box; the affidavit further specifies that no apartments were located nearby.[2] Doc. 13-3. Finally, Plaintiff's counsel has submitted an unsworn "declaration" alleging that "an additional action has been brought forth against Defendant Joseph Anthony Gonzales a/k/a Joe Anthony Gonzales, individually and d/b/a Breaktime Billiards in the United States District Court, for the Eastern District." Doc. 13-4. However, counsel does not specify the case number of the additional action or any further details regarding it.[3]

---

[2] The fact that the investigator noted that the establishment did not have a satellite dish is relevant because § 605(a) applies to satellite signal piracy. *See J & J Sports Productions, Inc. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, 2010 WL 2757106 at *3 (N.D. Cal. July 9, 2010) (No. C 09-05683 WHA). However, in light of Defendant's default, and the resultant limited scope for discovery, the implications of this last fact are discounted.

[3] In this unsworn "declaration," counsel also requests "an order granting Plaintiff its attorneys' fees and costs incurred in this action." Doc. 13-4. However, because Plaintiff's motion is silent as to the issue of attorneys' fees

The Court determines the statutory damages award according to what it "considers just." *Kingvision Pay–Per–View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D.Cal.2000); 47 U.S.C. § 605(e)(3)(C)(i)(II). In *Kingvision Pay–Per–View, Ltd. v. Backman*, the court awarded the statutory minimum of $1,000, finding that "distributors should not be overcompensated and statutory awards should be proportional to the violation," but noting that "a higher statutory award may be justified in cases where defendants are repeat offenders who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent." *Id*. at 1198-99. Similarly, in *Don King Productions/Kingvision v. Maldonado*, 1998 WL 879683 (N.D. Cal. December 11, 1998), the court noted that "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight … it would be inappropriate to award the statutory maximum." *Id.*, citing *Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997).

Nothing in the instant record suggests particularly egregious circumstances, with the possible exception of the fact that Defendant is a repeat offender (see below). Defendant did not charge a cover fee, promote the showing, or charge premium prices for food and drinks during the telecast. Moreover the headcount during the telecast was less than twenty-five percent of the establishment's capacity. There is no evidence that the patrons who were present were even watching the Program or that the establishment experienced more than its usual level of patronage as a result of showing the Program. As to the Plaintiff's counsel's statement that Defendant is a repeat offender, counsel does not argue that, at the time the violation at issue in this case was committed, judgment had been entered and damages assessed against Defendant for the same conduct in another case. Absent evidence that Defendant was on notice that his conduct was in violation of laws against interception and that a prior damages award had failed to deter the

---

and costs and no details (e.g., a timesheet and dollar amount) are provided in counsel's declaration, the Court does not address this issue here.

Defendant, the Court finds the fact that Defendant is a repeat offender less persuasive than it otherwise would have. In light of all the applicable facts, imposing the maximum statutory damages would be inappropriate. *See, e.g.*, *J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *3 (E.D. Cal. Apr.17, 2013) (No. 1:12–cv–00738–AWI–SAB); *J & J Sports Prods., Inc. v. Orellana*, 2013 WL 3341001, at *4 (E.D.Cal. July 2, 2013) (No. 1:12–cv–01850–AWI–SMS); *Joe Hand Promotions, Inc. v. Hauser*, 2014 WL 172532, at *1 (E.D. Cal. Jan. 15, 2014) (No. 1:13-cv-01072-LJO-SKO); *J & J Sports Prod. Inc. v. Reyes*, 2013 WL 4482742, at *1 (E.D. Cal. Aug. 20, 2013) (No. 1:12-CV-1847 LJO-BAM).

Weighing the relevant factors, the Court recommends a statutory damages award in the amount of $3,400.00, over two times the cost of the sub-licensing fee of $1,600. *See, e.g.*, *J & J Sports Productions, Inc. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, 2010 WL 2757106 (N.D. Cal. July 9, 2010) (No. C 09-05683 WHA) (setting statutory damages of $1,000 and enhanced damages of $250 in case of bar and grill with capacity of 150 people and seven television sets, where 37 to 45 people were present while bout was broadcast and defendant was a repeat offender). When considered together with the other damages recommended herein for the instant violation, this amount is a significant deterrent for Defendant or others inclined to illegally intercept protected programming.

**(i)     Enhanced Statutory Damages Pursuant to 47 U.S.C. 605(e)(3)(C)(ii)**

Plaintiff also seeks $100,000.00 in "enhanced statutory damages," the maximum amount of damages authorized by 47 U.S.C. § 605(e)(3)(C)(ii). § 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that *the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain,* the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(Emphasis added). Plaintiff's actual loss, i.e., the amount of the sub-licensing fee, is $1,600.00.

8

Enhanced statutory damages are analogous to punitive damages, as they are awarded at the Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 580 (1996) (purpose of punitive damages is to punish and deter egregiously improper conduct); *J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *4 (E.D. Cal. Apr. 17, 2013) (No. 1:12-cv-00738-AWI-SAB). Factors considered by courts in assessing whether to award enhanced statutory damages include (1) repeat violations, (2) the extent of the unlawful monetary gains, (3) actual damages to the plaintiff, (4) the defendant's advertising for the broadcast of the event, (5) charging cover to enter the establishment to view the event, or (6) charging a premium for food or drinks during the event. *See Kingsvision Pay–Per–View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000) (noting that "the principle of proportionality governs here: distributors should not be overcompensated and statutory awards should be proportional to the violation").

Here, Plaintiff requests enhanced statutory damages of $100,000.00, but fails to support its request for the maximum damages authorized by the statute with specific facts relating to the instant violation. The Court has discretion to increase the award of damages for each violation in an amount up to $100,000 when a "violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." *Backman*, 102 F.Supp.2d at 1198. However, Plaintiff's request for $100,000 in enhanced damages is based on a 3-minute investigation, a form affidavit from its investigator, and briefing that appears largely to be boilerplate. *See J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *4 (E.D. Cal. Apr. 17, 2013) (No. 1:12-cv-00738-AWI-SAB) ("Determining whether Defendant's actions were willful or egregious is hampered because Plaintiff filed a brief with minimal analysis of the facts specific to this case."). Although the Court appreciates Plaintiff's arguments regarding the need to deter piracy and its citations to cases awarding substantial damages, there is no evidence before

the Court that details the specific financial and commercial impact of the violation at issue in this case.

As discussed above with regard to the statutory damages requested by Plaintiff, the most prominent fact supporting the imposition of enhanced statutory damages is that Defendant is a repeat offender. However, again, Plaintiff's counsel does not specify whether the other violations at issue were egregious, or whether the instant violation occurred despite a prior judgment and damages award against the Defendant. Were Defendant to have committed the instant violation despite a previous judgment and damages award against him, the conclusion that Defendant was acting willfully and deserving of an "especially severe financial deterrent" would be justified. *Backman*, 102 F.Supp.2d at 1199 ("egregious willfulness" may "warrant harsh punitive damages"). Here the record does not support the conclusion that the Defendant acted with egregious willfulness and for purposes of direct or indirect commercial advantage or financial gain. The Court cannot award the statutory maximum amount of enhanced damages without adequate factual support for such an award in Plaintiff's moving papers. *See Joe Hand Promotions, Inc. v. Streshly*, 655 F. Supp. 2d 1136, 1139 (S.D. Cal. 2009) (finding Plaintiff Joe Hand Promotions, Inc.'s request for $100,000.00 in enhanced damages plus $ 875.00 in other damages "particularly distressing because Plaintiff (and Plaintiff's counsel) has obviously filed these piracy lawsuits before, and must know that $100,875 is an implausible award"). Nonetheless, in light of the allegation that Plaintiff is a repeat offender, the Court will award enhanced statutory damages in the amount of $1000.00.

///

///

///

///

**C. Damages for Conversion**

Finally, Plaintiff seeks $1,600.00 in conversion damages, the value of the property at the time of conversion (i.e., the fee to be paid to lawfully exhibit the Program).  Doc. 15, Ex. 2.  Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."  *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009).  The exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages.  Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion.  Docs. 1, ¶ 14; 15 at 2.  Defendant did not legally purchase the program.  Docs. 1, ¶ 17;15 at 3.  Finally, Plaintiff notes that Defendant would have been required to pay $1,600.00 for the right to lawfully exhibit the Program.  Docs. 13 at 20; 15 at 3. Thus, Plaintiff is entitled to recover conversion damages in the amount of the sublicensing fee of $1,600.00.

11

**RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED IN PART;

2. Judgment be entered in this action against Defendant Joseph Anthony Gonzales a/k/a Joe Anthony Gonzales; and

3. Damages be awarded as follows:

   a. $3,400.00 in statutory damages for a violation of 47 U.S.C. § 605(a);

   b. $1,000.00 in enhanced statutory damages for a violation of 47 U.S.C. § 605(a); and

   c. $1,600.00 in damages for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 5, 2015**              **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE